UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL ASSOCIATION OF
SHEET METAL, AIR, RAIL AND
TRANSPORTATION WORKERS,
TRANSPORTATION DIVISION
24950 Country Club Blvd. Suite #340
North Olmsted, OH 44070

and

SMART-TD GENERAL COMMITTEE OF
ADJUSTMENT GO-953
5990 SW 28th Street #F
Topeka, KS 66614

and

SMART-TD GENERAL COMMITTEE OF
ADJUSTMENT GO-927
320 S. Broadway Ave. Suite #600
Tyler, TX 75702

and

SMART-TD GENERAL COMMITTEE OF
ADJUSTMENT GO-577
1776 Woodstead Ct., Suite #202
The Woodlands, TX 77380

and

SMART-TD GENERAL COMMITTEE OF
ADJUSTMENT GO-569
12200 NW Ambassador Drive, Suite #236
Kansas City, MO 64163

      Plaintiffs

**Civil Action No.: 1:21-cv-5506**

1

v.

UNION PACIFIC RAILROAD COMPANY
8800 Douglas Street 3rd Floor
Omaha, NE 68179

 Defendant

# PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF UNDER THE RAILWAY LABOR ACT

 Plaintiffs, the Transportation Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers; International Association of Sheet Metal, Air, Rail and Transportation General Committee of Adjustment ("GCA") 953; GCA 577; GCA 569; and GCA 927 (hereinafter collectively referred to as "SMART-TD" or "Plaintiffs") seek declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief against Defendant Union Pacific Railroad Corporation ("Union Pacific" or "the Carrier").

## JURISDICTION AND VENUE

 1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 (declaratory judgments), 1331 (federal question), and 1337 (Act regulating commerce, *viz.*, the Railway Labor Act, 45 U.S.C. § 151, *et seq.*).

 2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c) because Union Pacific operates through this judicial district, and because Union Pacific is subject to personal jurisdiction here.

 3. SMART-TD, formerly United Transportation Union, is the duly authorized representative for the purposes of the RLA of the crafts or classes of train service employees, including Conductors, employed by Union Pacific, and is a "representative" as defined by

Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth. SMART-TD is located at 24950 Country Club Boulevard, Ste. 340, North Olmsted, Ohio 44070.

4. Union Pacific is a corporation engaged in the interstate transportation of goods by rail, and is a "carrier" as defined by Section 1 First of the RLA, 45 U.S.C. § 151 First. Union Pacific has its principal operating office in Omaha, Nebraska, and operates within this judicial district.

## CLAIM FOR RELIEF

5. Collective bargaining between railroads and their employees' representatives over rates of pay, rules and working conditions is governed by the RLA. Collective-bargaining agreements ("CBA") thereunder are amended through the service of written notice of intended changes in agreements affecting rates of pay, rules or working conditions, pursuant to Section 6 of the RLA, 45 U.S.C. § 156. Such proposals, called "Section 6 Notices," are negotiated in conferences between representatives designated and authorized by the carrier or carriers, and by the collective bargaining representative(s) of their employees. 45 U.S.C. §§ 152 Second, 156. If conferences fail, the dispute is subject to mediation by the NMB. 45 U.S.C. § 155 First. If mediation fails, the President of the United States may appoint an emergency board ("PEB") to investigate and issue recommendations for settlement of the dispute. 45 U.S.C. § 160. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

## The Status Quo Requirement under the Railway Labor Act

6. The RLA governs labor relations in the railroad industry. The principal purpose of the RLA is to "avoid any interruption to . . . the operation of any carrier ... .." 45 U.S.C. § 151a(1).

7. Section 2 First of the RLA, provides:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First.

8. The RLA mandates a very specific procedure to change working conditions. Section 6 of the RLA, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

45 U.S.C. § 156.

9. Taken together, these sections of the RLA require carriers to maintain the status quo with respect to rates of pay, rules, and working conditions until the mandatory notice, negotiation, and mediation procedures of the Act are completed.

10. Federal courts are empowered to issue injunctions to stop unilateral action by a rail carrier during this process of resolution.

## The Current Collective Bargaining Picture

11. SMART-TD and Union Pacific are parties to several agreements that control and detail the terms and conditions of employment for the class and/or craft of train service

employees represented by SMART-TD, and also to various work practices which have become an integral and implicit part of those agreements though not set forth therein.

12. Currently, CBAs between SMART-TD and Union Pacific provide processes for determining whether a trainman is physically qualified to perform the duties the position requires. If a trainman is unfit, he or she is then considered medically disqualified from performing service and may not return until declared fit to return.

13. These agreements provide that trainmen found to be physically unfit to perform the duties of their position may challenge Union Pacific's determination as to their fitness, typically by assembling a panel of three doctors to determine if the trainman meets the physical qualifications of the position. If found fit by the panel, the employee is to be returned to service.

### President Biden's COVID-19 Vaccine Mandate for Federal Contractors

14. On September 9, 2021, President Biden issued an executive order directing "[e]xecutive departments and agencies… to the extent permitted by law, ensure that contracts and contract-like instruments… include a clause that the contractor and any subcontractors… shall incorporate into lower-tier subcontracts." The executive order further stated that the contract clause "shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force…" Finally, the executive order requires that the "clause shall apply to any workplace locations… in which an individual is working on or in connection with a Federal Government contract or contract-like instrument…"

15. On September 24, 2021, the Safer Federal Workforce Task Force issued its "COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors." This guidance requires "COVID-19 vaccination of covered contractor employees, except in limited

circumstances where an employee is legally entitled to an accommodation…" by December 8, 2021.

### Union Pacific's Unilateral Change to the Medical Qualifications of Employees and Direct Dealing With Employees

16. On Friday, October 8, 2021, Union Pacific General Director of Labor Relations Naomi Deines ("Director Deines") notified SMART-TD officers that Union Pacific, as a federal contractor, would comply with President Biden's vaccine mandate and medically disqualify any employee who did not comply by December 8, 2021. Director Deines further asserted that action must be taken to implement the mandate by Monday, October 11, 2021, a mere three days later.

17. Prior to Director Deines' email on October 8, 2021, Union Pacific did not engage SMART-TD officers regarding the vaccine mandate, nor attempt to engage in any bargaining over the matter, or even the process or related issues regarding the mandate. Rather, when questioned by SMART-TD officers over whether Union Pacific intended to impose a vaccine mandate, Union Pacific repeatedly stated that its legal department was looking into the matter.

18. SMART-TD officers responded Director Deines' email of October 8, 2021, via letter on the same day, stating, "[a]s in typical fashion, Carrier has provided no information to the Organization prior to the notification sent on October 8th and is insistent that action must be taken by October 11, 2021… ." They further stated that the "compressed timeframe is an unrealistic window for information to be exchanged, or for meaningful discussions to occur between the parties." SMART-TD requested a conference call between the parties to discuss the matter and asked that Union Pacific provide information pertaining to the mandate. Finally, SMART-TD asked for a postponement of the October 11, 2021, deadline to allow for a full discussion of the matter.

19. Director Deines responded to SMART-TD's letter via email on October 9, 2021, stating that Union Pacific would "be providing details to its employees about its compliance with [President Biden's executive order] on Monday, 10/11." The email further stated, [t]his communication will inform employees about the $300 incentive for any agreement employee who is fully vaccinated or has received an approved accommodation by 12/8." Finally, Director Deines scheduled a conference on October 14, 2021, to "discuss the implementation of the vaccine mandate."

20. In a subsequent email on October 10, 2021, Director Deines re-scheduled the conference call from October 14, 2021, to October 11, 2021, the same day that Union Pacific was announcing its vaccine mandate to the workforce.

21. The conference call was held on October 11, 2021, wherein Union Pacific informed SMART-TD officers of some particulars of the vaccine mandate and answered some questions posed by SMART-TD officers. Specifically, Union Pacific explained that it unilaterally was imposing the $300 payment as it believed that was fair to employees. Union Pacific also made clear that any employee who failed to comply with the vaccine mandate would not be immediately dismissed, but would instead be medically disqualified, a process that is historically subject to various CBAs between the parties.

22. Importantly, at no point on the October 11, 2021, conference call did any bargaining occur. Rather, at the time the conference call was held, Union Pacific had already announced the vaccine mandate to its workforce, including SMART-TD members. During the conference call, Union Pacific merely reiterated the terms of the vaccine mandate, including its unilateral decision to pay vaccinated employees a $300 bonus, as well as its decision to medically disqualify employees.

23. The payment of bonuses has always been a subject of bargaining between Union Pacific and SMART-TD, and such an agreement has been reached as recently as May of 2020.

24. Similarly, the medical disqualification of employees is subject to terms contained in agreements between SMART-TD and Union Pacific, including the rights afforded to employees to challenge their alleged physical inability to perform their work.

25. Immediately following the conference call, via letter dated October 12, 2021, SMART-TD officers stated that while they recognize the seriousness of the COVID-19 pandemic and the federal government's action, Union Pacific could not institute the mandate and alter the current status quo between the parties without first bargaining in accordance with the processes contained in the Railway Labor Act. Accordingly, SMART-TD requested a meeting to discuss the issue.

26. Union Pacific did not respond to SMART-TD's letter dated October 12, 2021. Accordingly, SMART-TD sent another letter on October 14, 2021, stressing the seriousness of Union Pacific's unilateral action and again requested a meeting to discuss the issue.

27. On October 15, 2021, Union Pacific responded to SMART-TD's letters, stating that it is obligated to impose its vaccine mandate due to the executive order as it is a contractor of the federal government.

### COUNT ONE – VIOLATION OF EXISTING AGREEMENTS AND THE RLA'S STATUS QUO REQUIREMENTS

28. SMART-TD incorporates by reference as if fully set forth herein each allegation of the preceding paragraphs.

29. Section 2 First of the RLA provides:

> It shall be the <u>duty of all carriers, their officers, agents, and employees to **exert every reasonable effort to make** and maintain **agreements** concerning rates of pay, rules, and working conditions</u>, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption

      to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First (emphasis added).

30. Under Section 2 of the Railway Labor Act, Union Pacific is required to bargain in good faith with the duly certified representative of the employees, SMART-TD, regarding hours, wages, and terms and conditions of employment.

31. Union Pacific's unilateral implementation of the vaccine mandate, which will result in the medical disqualification of any employee who is not fully vaccinated by December 8, 2021, results in a complete overhaul of the physical requirement process for the position of trainman as employees will be unilaterally barred from performing their jobs with no recourse.

32. The unilateral change to the parties' agreements with respect to physical disqualification and Union Pacific's refusal to bargain over this change violates Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156, entitling SMART-TD to declaratory and injunctive relief.

### COUNT TWO – VIOLATION OF OBLIGATION TO BARGAIN OVER EFFECTS OF VACCINE MANDATE

33. SMART-TD incorporates by reference as if fully set forth herein each allegation of the proceeding paragraphs.

34. Union Pacific's vaccine mandate has imposed changes to the working conditions of its employees represented by SMART-TD.

35. Assuming *arguendo* that Union Pacific had the right to issue its vaccine mandate, it remains that it had the obligation to bargain with SMART-TD over the effects of the mandate following SMART-TD's demand that bargaining take place.

36. Union Pacific's failure to bargain with SMART-TD over the vaccine mandate's effects on the employees it represents violations Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156.

### COUNT THREE – VIOLATION OF THE RLA'S PROHIBITION AGAINST DIRECT DEALING

37. SMART-TD incorporates by reference as if fully set forth herein each allegation of the proceeding paragraphs.

38. Section 2 Third states:

<u>Representatives</u>, for the purposes of this chapter, <u>shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives</u>. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

45 U.S.C. § 152, Third (emphasis added).

39. Section 2 Fourth states, in pertinent part:

Employees shall have the right to organize and bargain collectively through representatives of their own choosing… <u>No carrier</u>, its officers, or agents <u>shall deny or in any way question the right of its employees to join, organize or assist in organizing the labor organization of their</u> choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, . . . <u>or to influence or coerce employees in an effort to induce the them to join or remain or not to join or remain members of any labor organization</u>.

45 U.S.C. § 152, Fourth (emphasis added).

40. In addition to the duty to bargain in good faith required by Section 2 of the Railway Labor Act, Union Pacific is prohibited from directly dealing with SMART-TD's members regarding hours, wages, and terms and conditions of employment.

41. Union Pacific's unilateral decision to pay a $300 bonus to vaccinated employees violates the RLA's prohibition against direct dealing in violation of the RLA, 45 U.S.C. § 151 *et seq.*

42. The non-negotiated bonuses and unilateral decision to medically disqualify individuals who are not vaccinated functioned to undermine the collectedly-bargained agreements and reduce UPRR's obligations under those agreements.

43. Neither the National Railroad Adjustment Boards nor Public Law Boards have the power and authority to order an appropriate remedy, leaving SMART-TD unable to enforce its statutory rights in any venue other than federal court.

**WHEREFORE,** SMART-TD requests that this Court:

1. Issue a Declaratory Judgment that Union Pacific's actions unlawfully change the status quo and violate the carrier's obligations under the RLA;

2. Issue injunctive relief enjoining Defendant Union Pacific, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with it who receive actual notice from violating the RLA; and

3. Award SMART-TD its costs and attorney's fees incurred is this proceeding, and grant SMART-TD such other and further relief as the Court deems just and proper.

Respectfully submitted,

<u>Shawn M. McKinley</u>
Assistant General Counsel
Kevin C. Brodar
General Counsel
SMART-Transportation Division
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
Tel: (216) 228-9400
Fax: (216) 228-0937

kbrodar@smart-union.org
smckinley@smart-union.org

and

/s/ Robert E. Harrington, III
Robert E. Harrington, III
DUNN HARRINGTON LLC
22 W. Washington St., Suite 1500
Chicago, Illinois 60602
Tel: (312) 548-7221
Fx: (312) 548-7223
E-mail: reh@dhinjurylaw.com

12